CONCURRENCE
RONALD LEE GILMAN, Circuit Judge,
concurring.
I fully concur in the lead opinion and write separately only to emphasize a few points. First, our ruling today is not the end of the case. We are simply deciding that the Michigan Secretary of State has not met her burden of demonstrating that a stay of the district court’s preliminary injunction is warranted. In reaching this decision, we are limited to the admittedly one-sided proof available at this stage of the litigation because the Secretary, for whatever reason, did not timely submit any proof contradicting the plaintiffs’ evidence.
For instance, various appellate briefs supporting the Secretary’s position now characterize Metzger’s report, which was included with the plaintiffs’ complaint, as “junk science” and attack its alleged “cherry picking” of data. But the Secretary never submitted any contrary proof to the district court. She did not even request limited discovery until July 13, 2016, the day before the hearing on plaintiffs’ motion for a preliminary injunction and over seven weeks after the motion was filed. By that point, the district court reasonably concluded that her request was not timely.
*670 The Secretary will have an opportunity to present contrary evidence in subsequent proceedings. Perhaps the Secretary’s proof at later stages of this case will overcome the plaintiffs’, but at this early stage of the ease we are. limited to the proof that is presently in the record.
Turning to that record, the lead opinion concludes that PA 268 burdens the right to vote by increasing voter disenfranchisement in at least two ways. First, voter confusion resulting largely from the continued existence of the party vignettes on the ballots is likely to cause an increase in erroneous ballots due to some voters circling the vignettes rather than marking the bubbles in the partisan section of the ballot. The second burden involves longer lines at polling places, particularly in the African-American community.
With regard to the longer lines, I believe that precisely defining the burden at issue in this case is paramount. The consequential burden in my view is not — as the Secretary and the amici who support her argue — simply the extra time that each straight-party voter will have to spend marking additional bubbles. Nor is it the longer lines at polling places resulting from the aggregation of that extra time per se. Rather, it is the fact, as supported by the current record, that the longer lines will deter citizens from voting.
Among plaintiffs’ proof is a declaration from Daniel Baxter, the Director of Elections in • the Office of the Detroit City Clerk. He flatly states that “[l]onger lines will deter voters from voting.” Chris Swope, the Ingham County Clerk, makes a similar a statement. Taken together, along with Metzger’s report identifying the positive correlation between straight-party voting and the African-American community, the above declarations .support the district court’s preliminary injunction. And, unlike the potential disruptions in other cases that involve voter-identification requirements or the elimination of early voting, I see no grave harm to the state of Michigan in allowing straight-party voting to remain on the ballot this November, as it has for the past 125 years.
I next want to allay the unwarranted intimations by the Secretary and the amici supporting her that, by denying the stay, we are establishing a permanent constitutional entitlement to straight-party voting. This framing is misleading for two reasons. First, as mentioned above, we are at the preliminary stage of this case, and the ruling that the evidence now supports might well be different at a later stage. Second, even if the proof does not change, voting-regulation challenges under the Equal Protection Clause and Section 2 of the Voting Rights Act are jurisdiction-specific inquires. Whether a practice is permissible under a given set of facts is thus not legally determinative of whether it is permissible under a different set of facts.
The lead opinion identifies several Michigan-specific factors — the unusually long ballots and the unavailability of both early voting and no-excuse absentee voting— that exacerbate the burdens that the elimination of straight-party voting will have in Michigan. These conditions might not always exist in Michigan. Record evidence implicitly acknowledges this point. For instance, the declaration of Mary Lansdown, the President of the Randolph Institute’s Flint Chapter, notes that “the line problems would not be so bad if we had early voting like some states have, or if some people could vote absentee without a reason.”
Moreover, the confusion concern that we have identified could be greatly reduced by, for example, eliminating the party vignettes from the ballots. The continued presence of the vignettes on the ballots certainly appears to be a legislative oversight — perhaps one precipitated by the *671 Michigan legislature’s haste to create a purportedly better-informed electorate. In any event, just because the present record supports the district court’s preliminary injunction maintaining the option of straight-party voting for this November’s general election does not mean that the state must always permit straight-party voting.
For all of the above reasons, I concur in the lead opinion.